UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

CARLOS DANILO MATUTE, *individually and on behalf of all others similarly situated*,

Plaintiff,

-against-

NOSTRAND II MEAT CORP., 1421, CORP. and JAMALL 1 CORP. d/b/a THE MEAT PLACE and PETER SILLS and STANLEY LORMESTIL, as individuals,

Defendants.

------------------------------------------------------- x

REPORT AND RECOMMENDATION

25-CV-1177 (NCM)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Carlos Danilo Matute sued Nostrand II Meat Corp. ("Nostrand II"), 1421, Corp., and Jamall 1 Corp. ("J1C"), each doing business as The Meat Place; Peter Sills; and Stanley Lormestil, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq*. (*See generally* Compl., ECF No. 1.)[1] Plaintiff settled his claims with 1421, Corp. and Sills and dismissed his claims against Nostrand II. (ECF Nos. 31, 36.) Before the Court is Plaintiff's motion for default judgment "in a sum certain" against J1C and Lormestil, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(c). (*See generally* Mot., ECF No. 37.) The Honorable Natasha C. Merle referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment should be **granted in part** as follows: (1) a default

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

judgment should be entered against J1C and Lormestil and (2) Plaintiff should be awarded damages as set forth herein.

# I. BACKGROUND

## A. Facts

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

The corporate Defendants are each domestic corporations organized under the laws of New York with their principal executive offices located at 1421-23 Nostrand Avenue, Brooklyn, New York 11229. (*See* Compl., ECF No. 1 ¶¶ 8–9.) Sills, through 1421, Corp., was the owner of The Meat Place, a butcher shop and market, from 2019 until 2022. (*Id.* ¶ 20.) In this role, Sills oversaw daily operations; had power and authority over payroll decisions and the exclusive power to hire and fire employees; and established and paid employees' wages, set their work schedules, and maintained their employment records, including for Plaintiff. (*Id.* ¶¶ 22–26.) Since 2022, Lormestil, through J1C, has been the owner of The Meat Place; in that role, he oversees its daily operations, has power and authority over personnel and payroll decisions, and has the exclusive power to hire and fire employees. (*See id.* ¶¶ 27–33.)

Plaintiff was employed as a meat cutter and stocker by Defendants at The Meat Place from May 2019 until January 2025. (*Id.* ¶ 34.) He regularly worked over 60 hours per week from approximately 7:30 a.m. until 8:00 p.m. or later during his employment with Defendants. (*See id.* ¶¶ 35–37.) Plaintiff was paid a flat hourly rate of $15.00 per hour for all hours worked

from May 2019 until December 2019 and $16.00 per hour for all hours worked from January 2020 until January 2025. (*Id.* ¶ 38.)

Plaintiff alleges that Defendants did not pay him: (1) the required minimum wage for all hours worked beginning in January 2025;(2) throughout his employment, overtime wages for hours worked in excess of 40 hours per week; and (3) spread of hours pay for days on which he worked more than 10 hours. (*See id.* ¶¶ 39–41.) Plaintiff further alleges that Defendants did not provide wage notices and statements and that this failure caused him concrete harm. (*See id.* ¶¶ 42–46.)

**B. Procedural History**

Plaintiff initiated this lawsuit on March 3, 2025. (*See generally* Compl., ECF No. 1.) Plaintiff served the Complaint on the corporate Defendants on March 18, 2025 through the New York Secretary of State. (*See* ECF Nos. 9–11.) Plaintiff served Sills and Lormestil on March 25, 2025. (*See* ECF Nos. 12–13.) Sills and 1421, Corp. filed an Answer and Crossclaims against Nostrand II, J1C, and Lormestil on June 6, 2025. (*See generally* Answer, ECF No. 18.) After an initial conference—where Nostrand II, J1C, and Lormestil failed to appear—the Court entered a discovery order. (*See* Aug. 11, 2025 Minute Entry; ECF No. 25.)

On October 23, 2025, Plaintiff, 1421, Corp., and Sills reported a settlement in principle. (ECF No. 28.) The Court directed Plaintiff to (1) confirm his acceptance (if any) of an offer of judgment pursuant to Rule 68 or seek settlement approval; and (2) state whether he intended to pursue default judgment against Nostrand II, J1C, and Lormestil. (*See* Nov. 16, 2025 Order.) Plaintiff filed acceptance of the Rule 68 offer of judgment on December 12, 2025, and the Clerk of Court entered judgment against 1421, Corp. and Sills on December 15, 2025. (ECF Nos. 29, 31.)

At Plaintiff's request, after Nostrand II, J1C, and Lormestil still failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against them on December 23, 2025. (*See* ECF Nos. 32, 34.) On January 21, 2026, Plaintiff dismissed his claims against Nostrand II. (ECF No. 36.)

Plaintiff filed the instant motion for default judgment against J1C and Lormestil on January 21, 2026, seeking unpaid minimum and overtime wages, unpaid spread of hours wages, liquidated damages, statutory damages, pre-judgment interest, post-judgment interest, a 15% increase penalty for unpaid judgments, and attorneys' fees for enforcing the judgment. (*See generally* Mot., ECF No. 37; Mem., ECF No. 39.) Judge Merle referred the motion for report and recommendation. (Jan. 22, 2026 Order Ref. Mot.) At the Court's request, Plaintiff supplemented the motion on May 21, 2026. (May 15, 2026 Order; ECF No. 41.)

## II. <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a). If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzales v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).[2]

[2] Plaintiff, represented by the law firm Helen F. Dalton & Associates, P.C., purportedly moves for default judgment "*In a Sum Certain*, . . . pursuant to Rule 55(b)(2)." (Mot., ECF No. 37 at 1; Mem., ECF No. 39 at 2, 14–16.) Plaintiff appears to invoke Rule 55(b)(1), which "permits entry of judgment by the clerk of court, without involvement of a judge, in circumstances where 'the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 n.17 (2d Cir. 2011) (quoting *Green*, 420 F.3d at 104). However, a motion under Rule 55(b)(1) would be improper—*i.e.*, Plaintiff's claims "[do] not become a claim for a sum certain simply because [they] specified the amount of damages in the complaint or [their] supporting affidavit[s]." *See Alexandru v. Brown*, No. 11-CV-2157 (CBA)(LB), 2012 WL 2319246, at *4 (E.D.N.Y. Feb. 16, 2012), *R. & R. adopted by* 2012 WL 2320792 (E.D.N.Y. June 19, 2012) (denying Rule 55(b)(1) motion because "general allegations of damages arising from [a cause of action]" require plaintiff to "follow the procedures set forth in Rule 55(b)(2) in order to obtain a default judgment"). The Court has routinely rejected the same Plaintiff's counsel's attempts to circumvent exacting review of proposed default judgments in other wage-and-hour cases. *See, e.g.*, *Cruz v. PJR Drywall Constr. Inc.*, No. 24-CV-8567 (RPK)(MMH), 2026 WL 663716, at *2 (E.D.N.Y. Mar. 9, 2026), *R. & R. adopted by* Order Adopting R. & R., *Cruz v. PJR Drywall Constr. Inc.*, No. 24-CV-8567 (RPK)(MMH) (E.D.N.Y. Mar. 25, 2026); *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH), 2025 WL 2731755, at *3 (E.D.N.Y. Sep. 25, 2025), *R. & R. adopted by* Order Adopting R. & R., *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH) (E.D.N.Y. Oct. 10, 2025); *Cordova v. Envi World LLC*, No. 23-CV-3630 (DLI)(MMH), 2025 WL 2589044, at *3 (E.D.N.Y. Sep. 8, 2025), *adopted in part & rejected in part on other grounds by* 2025 WL 3240236 (E.D.N.Y. Nov. 20, 2025); *Hernandez v. Fu Long Food Prod. Inc.*, No. 24-CV-8391 (NCM)(MMH), 2025 WL 2470668, at *2 (E.D.N.Y. Aug. 26, 2025), *R. & R. adopted by* 2025 WL 2653909 (E.D.N.Y. Sep. 16, 2025). Therefore, as "[i]n all other cases," including this one, Rule

## III. JURISDICTION & VENUE

### A. Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sep. 27, 2021) (citing *Mickalis Pawn Shop*, 645 F.3d at 125–27). The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims. 28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sep. 14, 2024), *R. & R. adopted by* 2024 WL 4355488 (E.D.N.Y. Sep. 30, 2024) (cleaned up).

### B. Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s.]" *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012).

---

55(b)(2) governs the motion, under which the Court exercises discretion "to determine the amount of damages or establish the truth of the [Plaintiff's] allegations." *Mickalis Pawn Shop*, 645 F.3d at 129 & n.17.

The Court has personal jurisdiction over J1C and Lormestil. *First*, Plaintiff properly served J1C by delivering a copy of the summons and Complaint to the New York Secretary of State. (*See* ECF No. 11.) This method of service on corporations complies with federal and state procedural rules. Fed. R. Civ. P. 4(h)(1)(A)–(B); N.Y. Bus. Corp. Law § 306(b)(1). Further, after two unsuccessful attempts to serve Lormestil personally, Plaintiff properly served him by affixing the summons and Complaint to the door of Lormestil's usual place of adobe (as verified by the New York State Department of Motor Vehicles) and mailing the summons and Complaint to him by first class mail. (*See* ECF No. 13.) This service method follows federal and state rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(4).

*Second*, the Court has general jurisdiction over J1C because it is a "New York corporation[] 'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301), *R. & R. adopted by* 2018 WL 4288625 (E.D.N.Y. Sep. 7, 2018). Though Plaintiff does not allege Lormestil's domicile, the Court would have general jurisdiction over him if he was domiciled in New York. *See id.* at *3. If he was not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302." *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up). Lormestil conducts business within the state and owns J1C (Compl., ECF No. 1 ¶¶ 27–33), which sufficiently establishes specific jurisdiction. *Weitsman*, 2019 WL 7503022, at *3.

*Third*, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. J1C and Lormestil therefore have "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

For these reasons, the Court has personal jurisdiction over J1C and Lormestil.

### C. Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Complaint occurred during Plaintiff's employment in Brooklyn, New York. (Compl., ECF No. 1 ¶¶ 5, 34, 39–41.)

## IV. PROCEDURAL COMPLIANCE

Plaintiff demonstrates substantial compliance with the Local Civil Rules' requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") (cleaned up). Plaintiff includes a notice of motion (ECF No. 37); a memorandum of law in support of the motion (ECF No. 39); an affidavit with exhibits (ECF No. 38) showing, *inter alia*, that the Clerk has entered default against J1C and Lormestil (ECF No. 38-5); a proposed judgment (ECF No. 38-9); a statement of damages showing the proposed damages and basis for each element of damages (ECF No. 38-8); and a certificate of service stating that all documents in support of the request for default judgment have been mailed to Lormestil at his last known residential address and J1C at its last known

business addresses (ECF No 40). *See* Loc. Civ. Rs. 7.1(a)(1), 55(a)(1)(A), 55(a)(2), 55(a)(3), 55(c); *see also Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as compliant with the Local Civil Rules), *R. & R. adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). Accordingly, Plaintiff has complied with this district's Local Civil Rules.

Plaintiff has also complied with the Servicemembers Civil Relief Act ("SCRA"), which requires, "[i]n a default judgment action, a plaintiff . . . to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *R. & R. adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also* Loc. Civ. R. 55.2(a)(1)(B). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of N.J. v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *see also Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *R. & R. adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023). Plaintiff has submitted a status report from the U.S. Department of Defense Manpower Data Center confirming that Lormestil is not in the military. (*See* ECF No. 38-4 (SCRA Search).) Accordingly, the Court finds that Plaintiff has complied with the SCRA.

## V. DEFAULT JUDGMENT FACTORS

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *R. & R. adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, J1C and Lormestil's "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor*, *LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avendana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *R. & R. adopted by* 2021 WL 4248857 (E.D.N.Y. Sep. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Vazquez Romero v. La Morenita Fruit Mkt. Corp*, No. 23-CV-6300 (OEM)(MMH), 2026 WL

687228, at *6 (E.D.N.Y. Mar. 11, 2026), *R. & R. adopted by* Order Adopting R. & R., *Vazquez Romero v. La Morenita Fruit Mkt. Corp*, No. 23-CV-6300 (OEM)(MMH) (E.D.N.Y. Mar. 31, 2026).

Based on the foregoing, entry of default judgment against J1C and Lormestil is permissible.

## VI. LIABILITY

### A. Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sep. 29, 2023), *R. & R. adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). "The statute of limitations begins to run when an employee begins to work for the employer." *Esquivel*, 2023 WL 6338666, at *5. Plaintiff began working at The Meat Place for 1421, Corp. and Sills in May 2019 and J1C and Lormestil in April 2022 and commenced this action on March 3, 2025. (*See* Compl., ECF No. 1 ¶ 34.) In the instant motion, Plaintiff seeks unpaid wages and other damages as of April 19, 2022, the date Plaintiff purportedly began working for J1C and Lormestil. (ECF No. 38-8 (Damages Chart).) Therefore, based on the statute of limitations and the applicable period Plaintiff worked for J1C and Lormestil, and considering

J1C's and Lormestil's default, Plaintiff may recover under the FLSA and NYLL for any claims against J1C and Lormestil that accrued since April 2022.

**B. FLSA Coverage**

To establish a minimum wage or overtime claim under the FLSA, "plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *7 (E.D.N.Y. Sep. 19, 2024), *R. & R. adopted by* Order Adopting R. & R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (E.D.N.Y. Dec. 5, 2024); 29 U.S.C. §§ 206(a), 207(a).

**1. Employers Subject to the FLSA**

The Complaint alleges that J1C and Lormestil were Plaintiff's employers within the meaning of the FLSA. (Compl., ECF No. 1 ¶ 14.) An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d). "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sep. 8, 2022), *R. & R. adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML) (E.D.N.Y. Sep. 23, 2022); 29 U.S.C. §§ 206, 207. These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively. *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

**a. J1C**

An employer is an "enterprise engaged in commerce or in the production of goods for commerce" subject to the FLSA when the employer: (1) "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made or business done [] not less than $500,000[.]" 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Martinez v. Golden Flow Dairy*, No. 21-CV-2421 (ENV)(MMH), 2025 WL 3769328, at *5 (E.D.N.Y. Dec. 31, 2025), *R. & R. adopted by* Order Adopting R. & R., *Martinez v. Golden Flow Dairy*, No. 21-CV-2421 (ENV)(MMH) (E.D.N.Y. Feb. 11, 2026).

Plaintiff properly pleads enterprise coverage as to J1C. *Perry*, 2022 WL 1018791, at *6. The Complaint alleges that J1C engaged in interstate commerce when it "purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce;" "had employees engaged in interstate commerce, and/or in the production of goods intended for commerce . . . handle, sell and otherwise work with goods and material that have been moved in or produced for commerce;" and "had annual gross volume of sales of not less than $500,000.00" between 2019 and 2025. (Compl., ECF No. 1 ¶ 15.) Plaintiff further alleges that J1C "purchased all materials, goods, supplies and products through channels of interstate commerce, from suppliers and other sources that are located outside the State of New York" and that "[t]hese various materials were then imported by [J1C] each week to [its] place of business located within the State of New York, then delivered by [J1C] to [its] place of business, which [is] also owned by [J1C], and which were also purchased through channels of interstate commerce and from suppliers or vendors that are located outside of the State of New

York." (*See id.*) Plaintiff therefore plausibly alleges specific facts to establish that J1C's employees handle goods or materials that move "among the several States" and that their business generates sales over the statutory threshold. 29 U.S.C. § 203(b); *see id.* § 203(s)(1)(A); *see also, e.g.*, *Hernandez v. J & M Corona Deli Corp.*, No. 23-CV-9120 (RER)(PK), 2025 WL 2597767, at *5 (E.D.N.Y. Aug. 13, 2025) (finding enterprise coverage test met where plaintiff alleged that the corporate defendant made at least $500,000 in annual revenue and that it purchased all materials, goods, and products from suppliers outside the State of New York), *R. & R. adopted by* 2025 WL 2591538 (E.D.N.Y. Sep. 8, 2025).

Accordingly, Plaintiff adequately alleges that J1C operates an enterprise engaged in commerce and is therefore subject to the FLSA.[3]

**b. Lormestil**

Plaintiff also successfully establishes that Lormestil was his employer within the meaning of the FLSA. "The FLSA contemplates that more than one employer may be responsible for violations of the statute." *Echevarria v. ABC Corp.*, No. 21-CV-4959 (JS)(ARL), 2023 WL 5880417, at *4 (E.D.N.Y. Sep. 11, 2023) (citation omitted), *adhered to on reconsideration*, 2024 WL 1639934 (E.D.N.Y. Apr. 16, 2024). For individual defendants, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual operations in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). Courts also

[3] Because the Court finds that Plaintiff satisfies the enterprise coverage standard, it does not address whether Plaintiff also satisfies the individual coverage test.

consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61–62 (applying the *Carter* factors to determine individual liability under the FLSA). "The test looks at the totality of the circumstances, and no individual factor is dispositive." *See Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry*, 722 F.3d at 105).

Plaintiff has shown that Lormestil qualifies as an employer under the FLSA because his "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Plaintiff alleges that Lormestil owned J1C beginning in 2022 and had power and authority over Plaintiff's working conditions at The Meat Place, including his wages and compensation, whether he was hired or fired, his work schedule and pay rate, and his work assignments. (*See* Compl., ECF No. 1 ¶¶ 27–33.) These allegations are sufficient to establish that Lormestil was Plaintiff's employer within the meaning of the FLSA and was therefore required to comply with the FLSA's wage provisions. *See Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *7 (E.D.N.Y. Sep. 26, 2024) (holding that individual owners and operators of a corporation who set wages and the employer's operational schedule, and hired and fired employees, was an "employer" under the FLSA), *R. & R. adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025).

c. **Joint & Several Liability**

"A plaintiff's allegations that an individual and corporate defendant are part of a common ownership or management of a business, coupled with a defendant's default, are sufficient to allege joint employment." *Escobar v. Mahopac Food Corp.*, No. 19-CV-510 (FB)(JRC), 2025 WL 934906, at *7 (E.D.N.Y. Mar. 5, 2025) (citing *Choi v. AHC Med. Servs., PLLC*, No. 22-CV-1450 (MKB)(JRC), 2023 WL 5612394, at *5 (E.D.N.Y. Aug. 1, 2023), *R. & R. adopted by* 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023) and *Khan v. Nyrene, Inc.*, No. 18-CV-557 (ARR)(ST), 2020 WL 1931282, at *4 (E.D.N.Y. Mar. 11, 2020), *R. & R. adopted by* 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020)), *R. & R. adopted by* 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025). "As the Court has found that [J1C and Lormestil] were jointly [Plaintiff's] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [Plaintiff's] favor." *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (collecting cases); *see also Brito*, 2022 WL 875099, at *8.

**2. Employee Covered by the FLSA**

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *R. & R. adopted by* 2021 WL 4463483 (E.D.N.Y. Sep. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C.

§ 213(a) (listing multiple exemptions). Whether a plaintiff-employee's activities fall under the FLSA's exemptions is a question of law. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 n.28 (2d Cir. 2020) (citing *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012)).

Plaintiff alleges facts that establish, as a matter of law, that he was engaged in non-exempt employment under the FLSA.[4] Specifically, the Complaint alleges that Plaintiff was employed as a "meat cutter and stocker" for Defendants. (Compl., ECF No. 1 ¶ 34.) Employment in positions with similar duties is not exempt from the FLSA. *See Escobar*, 2025 WL 934906, at *7 (finding that plaintiff, a former employee working as a butcher, was a non-exempt employee under the FLSA); *Santana v. 82 Food Corp.*, No. 19-CV-4733 (SMG), 2020 WL 9814100, at *4 (E.D.N.Y. July 10, 2020) (finding that plaintiff, a food stocker at a supermarket, was an "employee" covered by the NYLL and FLSA). Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions. Accordingly, Plaintiff qualifies for the protections of the FLSA.

**C. NYLL Coverage**

To plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the New York Labor Law, the definition of employee and employer are nearly

[4] J1C and Lormestil have not appeared in this case to assert or offer any facts to support a finding that Plaintiff is an exempt employee. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6). Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee." *Brito*, 2022 WL 875099, at *8 (internal quotation marks omitted) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). The Court has already determined that J1C and Lormestil are Plaintiff's employers within the meaning of the FLSA. (*See* § VI.B.1., *supra*.) "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . Defendants [J1C and Lormestil] are Plaintiff's employers within the meaning of the NYLL" as well. *Perry*, 2022 WL 1018791, at *7. Therefore, Plaintiff qualifies for the protections of the NYLL.

**D. Statutory Violations**

In the Complaint, Plaintiff alleges that J1C and Lormestil violated the FLSA and NYLL overtime wage provisions (Counts 1 and 2), the NYLL minimum wage provision (Count 3), and the NYLL provisions related to spread of hours pay, wage notices, and wage statements (Counts 4 through 6). (*See* Compl., ECF No. 1 ¶¶ 27, 59–84.) Accordingly, the Court will address Plaintiff's alleged statutory violations and damages from April 2022, when J1C and Lormestil bought The Meat Place, until the end of Plaintiff's employment in January 2025. (*See* Mem., ECF No. 39 at 2–3.)[5]

---

[5] Plaintiff alleges violations of 12 N.Y.C.R.R. § 137-1.3 (Compl., ECF No. 1 ¶¶ 66–75), which was repealed in 2010 and replaced by 12 N.Y.C.R.R. § 146, the Hospitality Industry Wage Order. *See Toramall v. Manhattan Constr. Grp. LLC*, No. 18-CV-1062 (PGG)(GWG), 2020 WL 2763737, at *1 n.1 (S.D.N.Y. May 28, 2020), *R. & R. adopted by* 2020 WL 6482796 (S.D.N.Y. Nov. 4, 2020). Plaintiff alleges that he was employed at The Meat Place as a "meat cutter and stocker, while performing other miscellaneous duties." (Compl., ECF No. 1 ¶ 32.) Plaintiff offers

### 1. NYLL Minimum Wages (Count 3)

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *McLaughlin*, 2024 WL 4184485, at *9 (cleaned up). "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Bocon*, 2025 WL 832730, at *8 (quoting *Fermin*, 93 F. Supp. 3d at 41). "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10. "'If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate.'" *Tzilin*, 2024 WL 4309775, at *9 (quoting *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 119 (E.D.N.Y. 2023)).

As an initial matter, the Court must determine the applicable minimum wage rates Plaintiff is entitled to recover. *Marina's Bakery*, 2022 WL 875099, at *9. Under New York law, the applicable minimum wage rate is determined by the size and location of the employer

---

no facts in the Complaint or his affidavit to show that The Meat Place is a "restaurant" as defined by the Hospitality Industry Wage Order. *See* 12 N.Y.C.R.R. § 146-3.1 (defining "restaurant" as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises" or by various services); *Cazares v. Beety Mkt. Inc.*, No. 23-CV-320 (RPK)(PK), 2024 WL 3342288, at *7 (E.D.N.Y. Feb. 16, 2024) (finding vague allegation that defendant was "a food market" and that plaintiff's duties included preparing food, grilling, and washing dishes insufficient to establish that plaintiff was hospitality industry employee) (citing *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (RER)(DLI), 2018 WL 9945754, at *4 n.2 (E.D.N.Y. Oct. 17, 2018)), *R. & R. adopted by* Order Adopting R. & R., *Cazares v. Beety Mkt. Inc.*, No. 23-CV-320 (RPK)(PK) (E.D.N.Y. Mar. 21, 2024). Accordingly, the Court will apply 12 N.Y.C.R.R. § 142, the Minimum Wage Order for Miscellaneous Industries and Occupations, to Plaintiff as a non-hospitality worker.

and the dates of the plaintiff's employment. N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a). Plaintiff alleges that Defendants employed approximately 10 or more employees during his period of employment. (*See* Compl., ECF No. 1 ¶ 49.) J1C is thus classified as a "large employer" and is subject to the New York City rates for minimum wage. N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii). During the relevant period, this category of employer was subject to minimum wage rates of $15.00 per hour from January 1, 2022 until December 31, 2023; $16.00 per hour from January 1, 2024 through December 31, 2024; and $16.50 per hour from January 1, 2025 until the end of Plaintiff's employment. *See id.*

Plaintiff alleges he was paid $16.00 per hour for all hours worked from January 2022 until January 2025. (*See* Compl., ECF No.1 ¶ 38.) This hourly rate is below the applicable minimum wage for January 2025 only. Accordingly, the Court respectfully recommends that J1C and Lormestil should be liable for violations of the NYLL's minimum wage provisions in January 2025.

**2. FLSA & NYLL Overtime Wages (Counts 1 & 2)**

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Dejesus,* 726 F.3d at 88 (alterations omitted) (quoting 29 U.S.C. § 207(a)(1)). For non-hospitality workers such as Plaintiff, the NYLL requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 142-2.2. To state a plausible FLSA overtime claim, "plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as

some uncompensated time in excess of the 40 hours.'" *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that J1C and Lormestil failed to pay him the requisite overtime pay. Plaintiff alleges that he regularly worked over 60 hours per week from approximately 7:30 a.m. until 8:00 p.m. during his employment with J1C and Lormestil. (*See* Compl., ECF No. 1 ¶¶ 35–37.) Plaintiff further alleges that J1C and Lormestil regularly required Plaintiff to work more than 40 hours per week without paying him the required overtime compensation. (*See* Compl., ECF No. 1 ¶ 40.) The Court therefore respectfully recommends that J1C and Lormestil should be liable for failure to pay overtime wages under both the FLSA and NYLL.

**3. NYLL Spread of Hours (Count 4)**

The NYLL's regulations also require that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required herein for any day in which . . . the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-3.4. The "spread of hours" is the length of time between the beginning and end of an employee's workday and includes "working time plus time off for meals plus intervals of duty." *Id.* § 142-3.16. A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked more than 10 hours on a given day but did not receive spread of hours pay. *See Sanchez*, 643 F. Supp. 3d at 371. Spread of hours pay for

non-hospitality workers is applicable if the employee earns an hourly rate at or below the minimum wage. *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH), 2024 WL 4131905, at *10 (E.D.N.Y. Sep. 10, 2024) (cleaned up), *R. & R. adopted by* Order Adopting R. & R., *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH) (E.D.N.Y. Sep. 30, 2024).

Plaintiff establishes that J1C and Lormestil failed to pay him the requisite spread of hours pay from January 1, 2024 until the end of Plaintiff's employment. *Sanchez*, 643 F. Supp. 3d at 371. As noted, Plaintiff alleges that he was paid $16.00 per hour for all hours worked from January 2022 until the end of his employment in January 2025. (*See* Compl., ECF No. 1 ¶ 38.) Thus, during this period, Plaintiff earned equal to or less than the applicable minimum wage rates from January 1, 2024 until the end of his employment. *See* N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii). Plaintiff further alleges that: (1) from January 1, 2024 until September 2024, he worked from approximately 7:30 a.m. until 8:00 p.m. (12.5 hours per day) five days a week; and (2) from October 2024 until in or around January 2025, he worked from approximately 7:30 a.m. until 8:00 p.m. (12.5 hours per day) for four days per week; and from approximately 7:30 a.m. until 9:00 p.m. (13.5 hours per day) for two days per week. (Compl., ECF No. 1 ¶ 36(iii–iv).) Plaintiff contends that he was not paid an additional hour at the applicable minimum wage for those days. (*Id.* ¶ 41.)

Accordingly, the Court respectfully recommends that, based on Plaintiff's undisputed allegations, J1C and Lormestil should be liable for unpaid spread of hours pay for January 1, 2024 until the end of Plaintiff's employment when he earned at or below minimum wage.

### 4. NYLL Wage Notices & Wage Statements (Counts 5 & 6)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number. N.Y. Lab. Law § 195(1)(a). The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*"). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate

notices and the downstream harm," *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). In other words, "the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" *Tzilin*, 2024 WL 4309775, at *11 (quoting *Guthrie III*, 113 F.4th at 309).

"In the wake of *Guthrie* [*III*], [c]ourts in this Circuit are in agreement that a plaintiff has standing if they plausibly allege that, by failing to provide the required wage statements, the employer was able to hide its violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of his unpaid wages." *Cruz*, 2026 WL 663716, at *12 (citing *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM)(SIL), 2025 WL 1808694, at *12 (E.D.N.Y. July 1, 2025)). The allegations of the Complaint establish that J1C's and Lormestil's failure to provide hiring notices and wage statements to Plaintiff caused him a tangible injury. Plaintiff alleges that J1C and Lormestil failed to "post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment," "provide [him] with a wage notice at the time of his hire or at any time during his employment," and "provide [him] with an accurate wage statement that included all hours worked and all wages received each week when [he] was paid." (Compl., ECF No. 1 ¶¶ 42–44.) He further alleges that, as a result, he suffered a "concrete harm," including

> inability to identify [his] employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have receiving for his regular hours and overtime hours, terms, and conditions of his

> pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.

(*Id.* ¶ 45.) Finally, Plaintiff alleges that "Defendants' alleged willful failures to provide [him] with these documents prevented [him] from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL." (*Id.* ¶¶ 45–46.) Plaintiff sufficiently establishes Article III standing when he alleges that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment. *See, e.g.*, *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH), 2025 WL 2731755, at *8 (E.D.N.Y. Sep. 25, 2025) (finding WTPA violation where plaintiff alleged, *inter alia*, that "an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL" caused him concrete harm), *R. & R. adopted by* Order Adopting R. & R., *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH) (E.D.N.Y. Oct. 10, 2025).

The Court thus respectfully recommends that J1C and Lormestil should be liable for violations of the NYLL's wage notice and wage statement provisions.

## VII. <u>DAMAGES</u>

### A. Burden of Proof

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). "On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551,

at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *R. & R. adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sep. 16, 2021).

However, because the employee bears the burden to properly record a plaintiff's work hours, that plaintiff is not required to compute FLSA damages precisely. *Chacha v. Nueva Era Flower Corp.*, No. 23-CV-3367 (AMD)(MMH), 2025 WL 2609246, at *13 (E.D.N.Y. Sep. 8, 2025) (cleaned up), *R. & R. adopted by* 2025 WL 2775917 (E.D.N.Y. Sep. 30, 2025). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Amador v. 109-19 Food Corp.*, No. 21-CV-4633 (EK)(VMS), 2025 WL 1032031, at *27 (E.D.N.Y. Mar. 14, 2025) ("In order to determine damages, the court may presume the accuracy of plaintiffs' recollection and estimates of hours worked set forth in their affidavits and damages calculations.") (cleaned up), *R. & R. adopted by* 2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025).

A plaintiff who establishes claims under the FLSA and NYLL may not recover damages under both the FLSA and the NYLL for wages earned during the same period. *Rosas* 2024 WL 4131905, at *13. Rather, "if a plaintiff is entitled to damages under both federal and state wage law, the court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief." *Reyes v. Bellerose Halal Meat Inc.*, No. 21-CV-6413 (MKB), 2025 WL 2664258, at *10 (E.D.N.Y. Sep. 17, 2025) (cleaned up). Because the NYLL provides the same or greater recovery than the FLSA at all relevant times during Plaintiff's employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff seeks unpaid minimum and overtime wages, statutory damages for wage statement and wage notice violations under the NYLL, spread of hours damages, liquidated damages, pre-judgment interest, post-judgment interest, a penalty for untimely payment of judgment, and attorneys' fees for enforcement of the judgment. (*See* Mem., ECF No. 39 at 13–22.) Plaintiff submits a damages chart based on the allegations in the Complaint and his affidavit. (*See* Matute Aff., ECF No. 38-7; ECF No. 38-8 (Damages Chart).) The Court will address each category of damages in turn and will include Plaintiff's requested amounts, if any.[6]

**B. Minimum Wages**

The Court has already determined that Plaintiff is entitled to the minimum wage rates set forth in the NYLL and its regulations because they were higher than the federal minimum wage rate during the relevant period. (*See* § VI.D.1., *supra*.) To calculate the minimum wage damages, the Court calculates the difference between Plaintiff's regular hourly rate of pay and the applicable minimum wage, multiplied by the number of regular rate hours worked per week, and multiplied by the number of weeks during the relevant period.

As noted, Plaintiff is entitled to minimum wage damages only in January 2025 when he was paid below the minimum wage. (*See* § VI.D.1., *supra*.) During this period, Plaintiff worked for approximately 86 hours per week and was paid $16.00 per hour. (*See* Matute Aff., ECF No. 38-7 ¶¶ 10–11.) Using the formula described above, Plaintiff is entitled to the unpaid minimum wages set forth in Table 1:

[6] To the extent that the Court's calculations differ from Plaintiff's due to rounding or other discrepancies, the Court's calculations will govern.

*Table 1: Unpaid Minimum Wages*

| Time Period[7] | NYLL Min. Wage | Reg. Pay Rate | Diff. btwn. Min. Wage & Reg. Pay Rate | Reg. Rate Weekly Hours Worked | # Weeks[8] | Total Unpaid Min. Wages |
|---|---|---|---|---|---|---|
| 01/01/2025 to 01/22/2025 | $16.50 | $16.00 | $0.50 | 40 | 3 | $60.00 |
| | Total: | | | | | **$60.00** |

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$60.00** for unpaid minimum wages under the NYLL.

### C. Overtime Wages

As noted, under the FLSA and NYLL, Plaintiff is entitled to overtime compensation of at least one and one-half times his regular hourly rate for hours worked over 40 per week. *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *R. & R. adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)). When a plaintiff is paid above the minimum wage, however, the "overtime compensation should be determined by

---

[7] Plaintiff's damages calculations use January 22, 2025 as his last day of employment with Defendants. (*See* ECF No. 38-8 (Damages Chart).) The Court accepts this reasonable approximation based on the Complaint and Plaintiff's affidavit, which only allege "January 2025" as the end date.

[8] "Weeks" refers to the number of weeks during the corresponding dates of employment.

multiplying [the] agreed upon wage rate by one and one-half." *Marvici v. Roche Facilities Maint. LLC*, No. 21-CV-4259 (AS)(JLC), 2023 WL 5810500, at *7 (S.D.N.Y. Sep. 8, 2023), *R. & R. adopted by* 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023).

Plaintiff is entitled to one- and one-half times (1) his regular hourly rate for all weekly hours worked over 40 from April 2022 until December 31, 2024, and (2) the applicable New York City minimum wage rate for all weekly hours worked over 40 from January 1, 2025 until January 22, 2025. Specifically, Defendants were required to pay Plaintiff the following overtime hourly rates: (a) $24.00 per hour between April 19, 2022 and December 31, 2024 (*i.e.*, $16.00 x 1.5); and (b) $24.75 on or after January 1, 2025 (*i.e.*, $16.50 x 1.5). "Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate . . . by the total number of overtime hours worked" per week and multiplied by the number of weeks during the relevant period. *Sanchez*, 643 F. Supp. 3d at 377.

For example, Plaintiff worked between 62.5 to 71.5 hours per week between April 19, 2022 through December 31, 2023, of which 22.4 to 31.5 hours should have been paid at the overtime rate. During this time, Plaintiff was paid at the regular hourly rate of $16.00 for all hours worked but should have been paid $24.00 for the 20 or more hours of overtime. The Court calculates his unpaid overtime for the period from April 19, 2022 through December 31, 2023 as $19,008.00 (*i.e.*, (($24.00 – $16.00) x 27 overtime hours x 88 weeks)).[9] Applying this formula, Plaintiff is entitled to the total unpaid overtime wages listed in Table 2:

[9] Plaintiff calculates damages from April 19, 2022, when Lormestil bought The Meat Place, through January 22, 2025, his last day of employment. (*See* ECF No. 38-8 (Damages Chart).) The Court accepts this reasonable approximation based on Plaintiff's affidavit, which only avers "April 2022" as the beginning of the relevant period. (Matute Aff., ECF No. 38-7 ¶ 3.) Additionally,

*Table 2: Unpaid Overtime Wages*

| Dates of Employment | NYLL Min Wage. | NYLL OT Pay Rate | Pl.'s. Pay Rate | Diff. btwn NYLL OT & Pl.'s Pay Rate | Weekly OT Hours | # Weeks | Total Unpaid OT Wages |
|---|---|---|---|---|---|---|---|
| 04/19/2022 to 12/31/2023 | $15.00 | $24.00 | $16.00 | $8.00 | 27 | 88 | $19,008.00 |
| 01/01/2024 to 09/30/2024 | $16.00 | $24.00 | $16.00 | $8.00 | 27 | 39 | $8,424.00 |
| 10/01/2024 to 12/31/2024 | $16.00 | $24.00 | $16.00 | $8.00 | 46 | 13 | $4,784.00 |
| 01/01/2025 to 01/22/2025 | $16.50 | $24.75 | $16.00 | $8.75 | 46 | 3 | $1,207.50 |
| | Total: | | | | | | **$33,423.50** |

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$33,423.50** for unpaid overtime wages.

### D. Spread of Hours

Plaintiff seeks $12,295.95 in unpaid spread of hours pay. (*See* ECF No. 38-8 at 3 (Damages Chart).)

"[S]pread of hours damages are calculated based on the applicable minimum wage rates for the relevant time period." *Solis*, 2024 WL 4271234, at *15. However, a plaintiff may not recover spread of hours damages if he earned more than the minimum wage during his employment. *Talmaci v. VEP Assocs. LLC*, No. 22-CV-5309 (CBA)(MMH), 2025 WL 2622122, at *10 (E.D.N.Y. Sep. 11, 2025), *R. & R. adopted by* 2025 WL 2772883 (E.D.N.Y.

Plaintiff calculates 27 and 46 hours of overtime hours per week from 2022 through the end of his employment in 2025. (*See* ECF No. 38-8 (Damages Chart).) The Court accepts these reasonable approximations based on Plaintiff's affidavit, which allege that Plaintiff worked between 62.5 to 71.5 hours per week from April 2022 until September 2024 and 86 hours per week from October 2024 until January 2025. (Matute Aff., ECF No. 38-7 ¶ 10.)

Sep. 26, 2025). Plaintiff is entitled to spread of hours damages for the period from January 1, 2024 until the end of Plaintiff's employment when his $16.00 hourly pay rate was below or equal to the NYLL minimum wage, he worked over 10 hours on some days, and he was not paid spread of hours for those days. (*See* Matute Decl., ECF No. 38-7 ¶¶ 8–10, 15.) To calculate the SOH premium owed, the Court multiplies the number of weeks per period by Plaintiff's weekly spread of hours days worked, and by the applicable minimum wage (*e.g.*, Weeks × SOH Days per Week × Minimum Wage). Therefore, Plaintiff is entitled to unpaid spread of hours pay as set forth in Table 3:

*Table 3: Unpaid Spread of Hours*

| Time Period | NYLL Min. Wage | Weeks | Spread of Hours Days per week | Total Unpaid SOH Pay |
|---|---|---|---|---|
| 01/01/2024 to 09/30/2024 | $16.00 | 39 | 5 | $3,120.00 |
| 10/01/2024 to 12/31/2024 | $16.00 | 13 | 6 | $1,248.00 |
| 01/01/2025 to 01/22/2025 | $16.50 | 3 | 6 | $297.00 |
| | | Total: | | **$4,665.00** |

In his damages calculation, Plaintiff incorrectly includes spread of hours damages for April 19, 2022 through December 31, 2023, when he was paid above minimum wage. (*See* ECF No. 38-8 at 3 (Damages Chart).) Additionally, Plaintiff incorrectly calculates spread of hours damages from January 1, 2024 to September 30, 2024 using 5.5 days per week, even though Plaintiff only worked five days per week during this period. (*Compare* Matute Aff., ECF No. 38-7 ¶ 15 ("I worked more than [ten] hours per day, approximately [five] days per week from in or around April 2022 until in or around September 2024"), with ECF No. 38-8 at 3 (Damages Chart) (Spread of Hours table listing, for the same period, 5.5 days worked per week.) Accordingly, the Court respectfully recommends awarding Plaintiff **$4,665.00** for unpaid spread of hours pay.

### E. Statutory Damages

Plaintiff seeks $5,000.00 for Defendants' failure to provide wage notices pursuant to NYLL § 195(1) and $5,000 for their failure to provide wage statements pursuant to NYLL § 195(3). (ECF No. 38-8 at 3 (Damages Chart).)

The penalty for failing to provide a wage notice is $50 per day, up to $5,000 (*i.e.*, 100 days or more), and the penalty for failing to provide wage statements is $250 per day, up to $5,000 (*i.e.*, 20 days or more). *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (citing N.Y. Lab. Law §§ 198(1-b) & 198(1-d)), *R. & R. adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023). Plaintiff asserts that he worked more than 100 days without receiving wage notices and more than 20 days without receiving wage statements during the relevant period when he was employed by J1C and Lormestil. (*See* Matute Aff., ECF No. 38-7 ¶¶ 16, 18.) Plaintiff is thus entitled to the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3).

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$10,000.00** for J1C's and Lormestil's violations of NYLL §§ 195(1) and 195(3).

### F. Liquidated Damages

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law. *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260 & N.Y. Lab. Law § 198(1-a)). However, the Second Circuit "interpret[s] the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct. Double recovery is generally disfavored." *Rana v. Islam*, 887

F.3d 118, 123 (2d Cir. 2018). A court may award damages under whichever statute allows for greater recovery. *See id.* "Liquidated damages are not available for damages under the WTPA." *Lata v. Live Constr. Corp.*, No. 24-CV-5981 (RER)(CLP), 2025 WL 2782336, at *13 (E.D.N.Y. Sep. 18, 2025) (citing *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15-CV-10186 (ER)(DF), 2021 WL 3375615, at *11 (S.D.N.Y. May 17, 2021), *adopted sub nom. Wen v. Hair Party 24 Hours Inc.*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021)), *R. & R. adopted by* 2025 WL 2782495 (E.D.N.Y. Sep. 30, 2025).

Here, where J1C and Lormestil have defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate. Accordingly, based on the Court's calculations herein, the Court respectfully recommends that Plaintiff should be awarded **$38,148.50** in liquidated damages under the NYLL, including $60.00 in unpaid minimum wages, $33,423.50 in unpaid overtime wages, and $4,665.00 in unpaid spread of hours pay.

### G. Pre-Judgment Interest

The FLSA does not allow for any pre-judgment interest where plaintiffs also receive liquidated damages. *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). "However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP), 2025 WL 959096, at *11 (E.D.N.Y. Feb. 6, 2025) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)), *R. & R. adopted by* Order Adopting R. & R., *Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP) (E.D.N.Y. Mar. 31, 2025). Accordingly,

Plaintiff is eligible to recover pre-judgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per year, but not on liquidated damages. *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 60 & n.7 (E.D.N.Y. 2024) (citing N.Y. C.P.L.R. § 5004).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)). Courts generally calculate pre-judgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *See, e.g.*, *Rosas*, 2024 WL 4131905, at *17.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded. (*See* § VII.F., *supra*.) The Court calculates pre-judgment interest by determining the midpoint of the relevant period. The Court selects September 5, 2023, the midpoint between the earliest date for which Plaintiff can recover damages for unpaid wages (April 19, 2022) and Plaintiff's end date of employment (January 22, 2025), as a reasonable intermediate date. Applying a nine percent per year rate, the Court respectfully recommends that Plaintiff should be awarded **$10,036.71** in pre-judgment interest to increase at a rate of **$9.41** per day.[10]

[10] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages for Plaintiff ($**38,148.50**) by 9%, then dividing by 365, for a daily rate of $9.41. The

### H. Post-Judgment Interest

"[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961 and quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)). Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### I. Unpaid Judgment Penalty & Attorneys' Fees

Plaintiff also seeks an automatic increase of 15% of any unpaid amount of the judgment still pending after 90 days following the entry of judgment and attorneys' fees for enforcement of the judgment, per NYLL § 198(4). (Mem., ECF No. 39 at 21–22; Supp. Ltr., ECF No. 41 at 1.) Where there is a cause of action under the NYLL,

> [a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law § 198(4). "The increase applies only to damages awarded under state law." *Perry*, 2022 WL 1018791, at *14 (collecting cases). Additionally, in any such NYLL cause of action, "the employee . . . shall have the right to collect attorney's fees and costs incurred in enforcing any court judgment." N.Y. Lab. Law § 198(4).

---

daily rate is then multiplied by 1,067, the number of days between September 5, 2023 and August 7, 2026, the date of this Report & Recommendation. In contrast, Plaintiff appears to calculate pre-judgment interest by first recalculating unpaid overtime wages starting on September 5, 2023. (*See* ECF No. 38-8 at 4 (Damages Chart).)

"Courts in this District have simultaneously awarded post-judgment interest under 28 U.S.C. § 1961 and have held the automatic increase penalty under the NYLL to apply." *See e.g.*, *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM)(RER), 2022 WL 4646866, at *12–13 (E.D.N.Y. Aug. 29, 2022), *R. & R. adopted by* 2022 WL 4662247 (E.D.N.Y. Sep. 30, 2022) (collecting cases); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-05418 (NJC)(JMW), 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024), *R. & R. adopted by* 2024 WL 2891798 (E.D.N.Y. June 10, 2024) (same). *But see Ahn v. Sun Cleaners, Inc.*, No. 19-CV-5919 (DLI)(PK), 2025 WL 845552, at *1 (E.D.N.Y. Mar. 18, 2025), *Chen v. Asian Terrace Rest., Inc.*, No. 19-CV-7313 (BMC), 2022 WL 1460272, at *3 (E.D.N.Y. May 9, 2022), and *Quesada v. Hong Kong Kitchen Inc.*, No. 20-CV-5639 (BMC), 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021) (holding that the NYLL penalty can only apply to judgments entered by a New York state court, and does not apply to federal judgments). In other words, "the one-time, late payment penalty is different in kind from a post-judgment interest award which accrues in perpetuity until the judgment is satisfied," and therefore is warranted in this case. *Diaz*, 2022 WL 4646866, at *13. Further, courts in this circuit have granted leave to plaintiffs to seek costs and attorneys' fees incurred in enforcement of a NYLL judgment and included such language in the default judgment. *See, e.g.*, *Plaza v. Perfecto Pizzeria Corp.*, No. 23-CV-09842 (SDA), 2026 WL 366685, at *5 (S.D.N.Y. Feb. 10, 2026); *Rehman v. Flatbushchicken LLC*, No. 24-CV-8882 (RPK)(CLP), 2025 WL 4664754, at *17 (E.D.N.Y. Dec. 1, 2025), *R. & R. adopted by* Order Adopting R. & R., *Rehman v. Flatbushchicken LLC*, No. 24-CV-8882 (RPK)(CLP) (E.D.N.Y. Jan. 5, 2026); *Park v. Khims Mkt. Inc.*, No. 24-CV-7437 (DG)(CLP), 2025 WL 3460949, at *1 (E.D.N.Y. Aug. 27, 2025), *R. & R. adopted by*

Order Adopting R. & R., *Park v. Khims Mkt. Inc.*, No. 24-CV-7437 (DG)(CLP) (E.D.N.Y. Sep. 9, 2025); *Lata*, 2025 WL 2782336, at *20.

As such, the Court respectfully recommends that Plaintiff's damages awarded under the NYLL should be increased by 15% if J1C and Lormestil fail to timely satisfy the judgment, and that Plaintiff should be granted leave to seek attorneys' fees for enforcement of the unpaid judgment, pursuant to NYLL § 198(4).

## VIII. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment against Defendants Jamall 1 Corp., doing business as The Meat Place, and Stanley Lormestil (ECF No. 37, as supplemented by ECF No. 41), should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment as amended[11] against Defendants Jamall 1 Corp., doing business as The Meat Place, and Stanley Lormestil; (2) Plaintiff should be awarded damages of **$96,333.71**, which includes: (a) **$60.00** in unpaid minimum wages; (b) **$33,423.50** in underpaid overtime wages; (c) **$4,665.00** for unpaid spread of hours pay; (d) **$38,148.50** in liquidated damages; (e) **$10,000.00** in statutory damages for failure to provide wage notices and wage statements; (f) **$10,036.71** in pre-judgment interest to increase at a rate of **$9.41** per day until entry of judgment; (g) Plaintiff should be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961; and (h) Plaintiff should be granted an increase of 15% of any unpaid amount of the judgment still pending after 90 days following the entry of judgment and leave to seek attorneys' fees to

[11] The proposed judgment at ECF No. 38-9 should be amended consistent with this Report and Recommendation, if adopted, or the Court's order, if modified.

enforce any unpaid judgment, per N.Y. Lab. Law § 198(4). All other requests in Plaintiff's motion should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Jamall 1 Corp. d/b/a The Meat Place at 1421-23 Nostrand Avenue, Brooklyn, New York 11229; and to Stanley Lormestil at 180 Emporia Avenue, Elmont, New York 11003.[12]

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Merle. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. Any party who fails to timely object to this Report and Recommendation forfeits further judicial review of this decision. *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).

**SO ORDERED.**

Brooklyn, New York
August 7, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

[12] In an abundance of caution, the Clerk of Court shall also mail this Report and Recommendation to Stanley Lormestil at 140-16 172nd Street, Jamaica, New York, 11434, his most recent address listed in Jamall 1 Corp.'s entry in the New York State Department of State Division of Corporations entity database (https://apps.dos.ny.gov/publicInquiry/) (last visited Aug. 7, 2026).